UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS, INC.,

Plaintiff,

v.

CITY OF BURLINGTON, a Washington municipality,

Defendant.

CASE NO. C05-0991C

ORDER

I.  INTRODUCTION

This matter has come before the Court on Plaintiff's motion for summary judgment (Dkt. No. 7). Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court hereby GRANTS the motion.

II.  BACKGROUND

Defendant is a party to a collective bargaining agreement covering public works employees. (*See* Ditter Decl. Ex. B, Agreement Between Teamsters Local Union No. 231 and City of Burlington.) Defendant also signed a subscription agreement in which it manifested its desire to participate in the Washington Teamsters Welfare Trust and agreed to accept and be bound by the Trust Agreement. (Ditter Decl. Ex. C, Washington Teamsters Welfare Trust Subscription Agreement.)  The Trust

ORDER – 1

Agreement, in turn, requires that

> Each Employer shall promptly furnish to the Trustees on demand any and all records of his Employees, concerning the classification of such Employees, their names, Social Security numbers, amount of wages paid and hours worked and any other payroll records and information that the Trustees may require in connection with the administration of the Trust Fund. . . .The Trustees or their authorized representatives may examine the payroll books and records of each Employer whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper Administration of the Trust Fund.

(Ditter Decl. Ex. A, Washington Teamsters Welfare Trust Agreement and Declaration of Trust ("Trust Agreement"), Art. IX § 1.)

In early 2005, the Trustees selected Defendant for an audit, the purpose of which was to ensure that Defendant was properly reporting its employees and in full compliance with the Trust Agreement. However, when Plaintiff, the Trustees' plan administrator, notified Defendant that it intended to audit the payroll records of all of Defendant's employees, Defendant resisted the request insofar as it pertained to employees who are not beneficiaries under the Trust Fund. (*See* Ditter Decl. Ex. D, May 4, 2005 Thomas Ltr.)

Plaintiff, Northwest Administrators, Inc., brought this action to compel Defendant to submit to an audit of its payroll records for all employees, including employees who are not members of the Teamsters, for the period between May 1, 2000, and February 2005. The information requested includes social security numbers, home address and home telephone numbers of all of Defendant's employees.

Plaintiff has now moved for summary judgment.

III.   ANALYSIS

    *A.   Applicable standard*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and provides in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the court must view all evidence in

ORDER – 2

the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

In the case at bar, Defendant argues that it is not obliged to submit its records pertaining to non-Teamster employees because to do so would be "contrary to the provisions of the United States Constitution; the Washington Constitution; and state and federal statutory law." (Def.'s Resp. 1.) More specifically, Defendant contends that to provide the requested records would be to violate the privacy provisions of both the federal and state constitutions, the federal Privacy Act and Washington's Public Records Act. The Court will address Defendant's federal law arguments and then turn to the state law arguments.

B. Federal law

1. *Constitutional right to privacy*

Defendant argues that its employees' right to privacy, guaranteed by the combined effect of the 1st, 4th, 5th and 14th Amendments, would be violated by Defendant's surrender of the requested payroll records to Plaintiff. Specifically, Defendant worries that both Plaintiff's request and its own provision of the employee records would be constitutional violations.

With respect to the constitutionality of Plaintiff's request, "[i]ndividuals and private entities are not normally liable for violations of most rights secured by the United States Constitution." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997) (citing *Lugar v. Edmonson Oil Co.*, 457

ORDER – 3

U.S. 922, 936 (1982)). "In order to maintain a cause of action based on an allegation of constitutional violations, a [complaining party] must show that the actions complained of are 'fairly attributable' to the government." *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Here, Defendant does not attempt to associate Plaintiff or the Trustees with the government. The Court finds no evidence on the record that would support a finding that actions taken by Plaintiff or the Trustees may be "fairly attributed" to the government. Therefore, the Court finds that Plaintiff's request does not implicate the Constitution.

With respect to Defendant's surrender of the requested records, the question is whether disclosure of the records, including Social Security numbers and other personal information to a private entity with whom Defendant has contracted to provide services to Defendant and its employees, violates the employees' constitutional rights. Thus, it appears that Defendant is resting its claim for relief "on the legal rights or interests of third parties," which it cannot do unless it shows that it should have third party standing to assert the rights in question.

Generally, federal courts are reluctant to find that a party has third party standing. *Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir. 1986). Whether Defendant has third party standing depends on whether it can satisfy each of the following three criteria: "first, the [party] must have a concrete interest in the outcome of the dispute; second, the [party] must have a close relationship with the party whose rights it is asserting; and third, 'there must exist some hindrance to the third party's ability to protect his or her own interest.'" *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994)). Where a party might itself be a "putative defendant[] who might be charged with violating a statute, ordinance or regulation," courts have been more willing to find an exception to the general preference. *Darring*, 783 F.2d at 877.

Here, the Court does not find that any of the three required elements for Defendant to have third party standing to assert the constitutional rights of its employees have been established. Although Defendant is arguably exposed to potential liability to its employees, the facts do not show that this

ORDER – 4

potential liability adds up to a sufficient "concrete interest in the outcome of the dispute" warranting a finding of third party standing.

The second prong is particularly important in light of the court's concern that "the relationship between the litigant and the third party be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Defendant may not rely solely on the employer-employee relationship to establish the required "close relationship." *See, e.g.*, *Fire Equip. Mfrs.' Ass'n v. Marshall*, 679 F.2d 679, 682 (7th Cir. 1982) (finding that a mere employer-employee relationship was not enough to warrant giving plaintiffs third party standing to assert their employees' rights). Beyond Defendant's employer-employee relationship, there is no other "relationship" that might satisfy this prong.

Finally, there is no indication that Defendant's employees would be unable to assert or protect their own interests.

Because Defendant has failed to make the required showing with respect to the three elements outlined above, the Court finds that Defendant does not have third party standing to assert claims on behalf of its employees.

### 2. *Privacy Act*

Defendant argues that the federal Privacy Act, 5 U.S.C. § 552a, forbids it to disclose its employees' Social Security numbers. The Privacy Act applies only to agencies of the federal government. *See* 5 U.S.C. § 552a(a)(1) (stating "'agency' means agency as defined in section 552(e) of this title"), *id*. § 552(f)(1) (formerly 552(e), redesignated by Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231) (referring to the definition of "agency" found in § 551(1)), *id*. § 551(1) (defining "agency" as "each authority of the Government of the United States" and enumerating discrete exceptions).

In addition to the unambiguous statutory language of the Privacy Act itself, it is well settled in the case law that "[t]he private right of civil action created by the Act is specifically limited to actions against

ORDER – 5

agencies of the United States government. The civil remedy provisions of the statute do not apply against private individuals, state agencies, private entities, or state and local officials." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985). Thus, neither Plaintiff nor Defendant are exposed to potential civil liability under the Privacy Act's civil remedy provisions.

Defendant's apparent fear that it could be subject to criminal fines imposed in § 552a(I)[1] is also groundless. This subsection states that "[a]ny officer or employee of an agency" engaging in the conduct therein prohibited will be guilty of a misdemeanor and could be fined up to $5,000. 5 U.S.C. § 552a(I)(1). However, this subsection employs the same definition of "agency" as does all of § 552a. In other words, the word "agency" in § 552a(I), as in the rest of the section, means federal agency. Thus, Defendant, as a non-federal agency, need not fear potential criminal liability for its role in disclosing its employees' Social Security numbers to Plaintiff.

For these reasons, the Court finds that the Privacy Act presents no obstacle to Defendant's provision of the requested records to Plaintiff.

 C. State law

  1. Washington state constitution

For the same reasons as discussed above, Defendant lacks standing to assert the constitutional rights, under the Washington state constitution, of third parties. *See State v. Burch*, 830 P.2d 357, 363 (Wash. Ct. App. 1992) (applying United States Supreme Court's three-part third-party standing analysis in a state constitutional case). Therefore, Defendant may not refuse to produce the requested records on state constitutional grounds.

  2. Washington Public Disclosure Act

---

[1] Defendant cites to § 552i(1). As there is no such section, and because the text of § 552a(i)(1) matches the context of Defendant's argument, the Court assumes that Defendant intended to cite the latter.

ORDER – 6

Defendant argues that Washington's Public Disclosure Act ("PDA"), WASH. REV. CODE §§ 42.17.250–348, prohibits it from complying with Plaintiff's request. However, Plaintiff's request does not trigger the operation of the Public Disclosure Act. Plaintiff's request for the employee records is not pursuant to the disclosure provisions of the PDA, but pursuant to the contract between Teamsters and Defendant, which authorizes such requests. To the extent that Plaintiff's request could be construed as governed by the PDA, it is Defendant's burden to show that the PDA operates to block the request. *See Prison Legal News, Inc. v. Dep't of Corr.*, 115 P.3d 316, 319–320 (Wash. 2005) (noting that PDA is a "strongly worded mandate for broad disclosure" and that the state agency bears the burden of proving an exemption from that mandate). Defendant makes no cognizable argument, and there is no evidence on the record that would support a finding that the PDA applies to Plaintiff's request. Therefore, the Court finds that Washington's Public Disclosure Act presents no obstacle to Defendant's compliance with Plaintiff's request.

### D. Legality of Trust Agreement

Defendant challenges the enforceability of the Trust Agreement, arguing that it is contrary both to statutory requirements and to public policy. However, aside from making this assertion, Defendant marshals no facts regarding the Trust Agreement and suggests no principle of public policy to support the assertion. Defendant's burden on a summary judgment motion is to present more than a conclusory allegation. *Wallis*, 26 F.3d at 890. Because Defendant has failed to do more than make conclusory statements of law as to this argument, the Court finds that there are no genuine issues of material fact as to the legality and enforceability of the Trust Agreement. The Trust Agreement is operative and remains binding on Defendant.

### E. Compliance with the Agreement requires production of records of non-Teamster employees

The section of the Agreement pursuant to which Plaintiff requested the payroll records at issue, cited above, imposes two discrete obligations: (1) that Defendant produce records pertaining to

ORDER – 7

"Employees" and (2) that the Trustees' authorized representatives "may examine the payroll books and records of each Employer whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper Administration of the Trust Fund." (Trust Agreement, Art IX § 1.) Thus, even though Defendant is correct when it claims that "Employees" refers to "Employees" as defined in the Trust Agreement, and is thus limited to those persons "on whose account an Employer is . . . required . . . to make Employer contributions," (*id*. Art. I. § 3) Defendant must still comply with the second obligation.

The second obligation is couched in plain language that requires Defendant turn over any records required in connection with the administration of the Trust. The records that may be requested are not subject to the limitation that the records be related to "Employees" as defined in the Trust Agreement. Plaintiff asserts

> The Trust Fund needs the payroll records for all employees at the City of Burlington to perform an audit and properly verify that the City is following the labor agreement and paying into the Trust Fund as required. . . .The Trustees of the Washington Teamsters Welfare Trust believe it is both necessary and advisable to the proper administration of the Trust that their authorized representative, Northwest, examine the City's books and records for the time period May 1, 2000 through February 28, 2005.

(Pl.'s Mot. 6.)

As this Court has noted before, "[t]he Supreme Court has held that the use of an audit to identify potential beneficiaries is a legitimate act of trust administration." *Nw. Adm'rs, Inc. v. Penske Transp. Servs., Inc.*, No. C02-0600C (W.D. Wash. filed Mar. 13, 2002) (Dkt. No. 24 at 4, filed Sept. 25, 2002) (citing *Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transp.*, 472 U.S. 559, 572 (1985). Because the records in the case at bar are sought in connection with Plaintiff's administration of the Trust, and because the Court is satisfied that Plaintiff requires the employees' Social Security numbers in order to verify and cross-check information, the Court finds that the instant audit is authorized by the Trust Agreement.

For these reasons, the Court finds that compliance with the Agreement requires that Defendant

ORDER – 8

furnish to Plaintiff all of the records as requested.

   *F.   Fees and costs*

The civil enforcement provisions of ERISA allow a court, "in its discretion," to grant "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In the Ninth Circuit, courts apply a five-factor test to determine whether fees and costs are appropriate. *Hummel v. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). The *Hummel* factors, which are not exclusive, are

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* A court need not find that all the factors support an award of attorney's fees. *S. A. McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). In addition to considering these and other factors, a court must also keep in mind that "ERISA . . . is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587 (9th Cir. 1984).

In the case at bar, there are facts relevant to both factors (1) and (5). The Court does find certain of Defendant's interrogatories to be unwarranted, insulting, and in bad taste. (*See, e.g.*, Thomas Decl. Ex. D, Pl.'s Resps. to Def.'s Interrogs. 2, 3, 8 (in which Defendant asks Plaintiff whether any of its employees have ever been convicted of offenses including indecent liberties, theft of livestock, or sexually violating human remains).) Even if Defendant's concern that the security of Plaintiff's facilities and procedures was founded in any factual basis, the information requested does not appear to be calculated to lead to discoverable or relevant evidence. In addition, in light of Plaintiff's assurances that audits are performed at the auditee's offices, that no original records leave the auditee's offices, and that it is unusual if any records are photocopied (Ditter Decl. ¶ 23), Defendant's suggestions that Plaintiff might sell Social Security numbers on eBay (Def.'s Resp. 10) or that Plaintiff would release information about

ORDER – 9

non-member employees to the Teamsters for recruitment purposes (*id*. 11) are unnecessarily inflammatory and insulting.

However, despite these facts, the Court finds no evidence to suggest that Defendant's energetic protective behavior was guided by bad faith. Similarly, although the Court found Defendant's legal arguments to be without merit, there is no evidence that Defendant advanced these arguments without sincerely believing in their merit. For these reasons, the Court does not find that *Hummel* factors (1) and (5) require an award of fees to Plaintiff.

The third *Hummel* factor, whether an award of fees would have a deterrent effect on similar behavior under similar circumstances in the future, is not particularly meaningful in this case. Had this case involved a successful individual plaintiff-pensioner facing off against a defendant benefits plan, it would be reasonable to expect that a fees award might deter future bad behavior on the defendant benefits plan's part, especially if the case effected other pecuniary impacts on the defendant. However, in a case involving a dispute between a plaintiff benefits plan and a defendant plan member employer, especially where the case involves intangible rights and interests, the plan member employer could reasonably be expected to appreciate the weight of a judicial precedent alone. Should this particular defendant be involved in a future similar case, a court could consider the existence of this Court's decision in this case in assessing the propriety of a fees award. For these reasons, the Court does not find that the specific facts of this case suggest that a fees award would have a deterrent effect.

The fourth *Hummel* factor, whether the parties requesting fees sought to benefit all plan participants, is the most significant factor in this case. Here, Plaintiff sought to perform an audit to confirm that Defendant was paying the proper amounts into the Trust. Because the question of whether employers are paying the proper amounts into the Trust affects all plan participants, the audit was on behalf of all plan participants. In light of this and the policy goals of ERISA, the Court finds that the fourth *Hummel* factor supports an award of fees.

The single remaining factor, Defendant's ability to pay, gives the Court pause. There is no

ORDER – 10

evidence on the record relevant to this determination. Without such evidence, the Court is reluctant to make a final determination as to whether fees should be awarded. Accordingly, Defendant is directed to submit a brief of no longer than 5 pages, on the subject of the second *Hummel* factor, by November 25, 2005, to SHOW CAUSE why Plaintiff's motion for $11,071.60 in fees and costs should not be granted. Plaintiff may submit a 5-page response. Such response must be submitted by December 2, 2005. Defendant's reply, of up to 3 pages, shall be due on December 7, 2005. The matter of fees and costs shall be noted for consideration on December 7, 2005.

IV.  CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS Plaintiff's motion for summary judgment. Defendant is ORDERED to submit to Plaintiff's audit as requested. Plaintiff's motion for fees and costs shall be noted for consideration on December 7, 2005.

SO ORDERED this 15th day of November, 2005.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 11